NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court-Manchester District Division
No. 2014-0730


JEFFREY ROY

v.

QUALITY PRO AUTO, LLC

Submitted: November 10, 2015
Opinion Issued: January 26, 2016


University of New Hampshire School of Law Civil Practice Clinic, of Concord (Peter S. Wright, Jr. on the brief), for the plaintiff.


Quality Pro Auto, LLC, self-represented party, filed no brief.


Holmes Law Offices PLLC, of Concord (Gregory A. Holmes on the brief), for New Hampshire Automobile Dealers Association, as amicus curiae.


DALIANIS, C.J. The plaintiff, Jeffrey Roy, appeals an order of the Circuit Court (Michael, J.) approving a recommendation of the Judicial Referee (Champagne, J.) that judgment be entered in favor of the defendant, Quality Pro Auto, LLC, on the plaintiff's small claim action alleging, among other things, that the defendant had breached the implied warranty of

merchantability when it sold a used motor vehicle to him.  See RSA 382-A:2-314 (2011).  We affirm.

The relevant facts follow.  The plaintiff bought a used motor vehicle from the defendant for $1,895.  The bill of sale indicated that the vehicle was sold "As is As seen."  The sale also included a form from the New Hampshire Division of Motor Vehicles (DMV) titled "**NOTICE OF SALE OF UNSAFE MOTOR VEHICLE**," which states, in pertinent part:  "If you are considering the purchase of a used motor vehicle which may not pass a New Hampshire safety inspection, you have a right under RSA 358-F, to request that the dealer inspect the vehicle prior to sale and list the defects which must be corrected before an inspection sticker will be issued."  The DMV form contains the following notice:  "**The motor vehicle described herein will not pass a New Hampshire inspection and is unsafe for operation**."  By signing the form, the plaintiff "**acknowledge[d] that [the] vehicle will not pass a New Hampshire inspection, is unsafe for operation, and cannot be driven on the ways of this state**."  The plaintiff indicated on the form that he did not "desire a safety inspection to be conducted."

According to the plaintiff, after he drove the vehicle to his home in Maine, he discovered that it "would not pass inspection because the frame was completely rotted almost to the point where it was dangerous."  The plaintiff alleges that the motor vehicle had "two rust holes, one the size of a softball," and that "[b]ecause the holes completely compromised the structural integrity of the vehicle, the vehicle failed inspection and was unsafe."  The plaintiff further alleges that when he "tried to get his money back, [the defendant] refused, asserting that the sale was 'as is-as shown.'"

Thereafter, the plaintiff brought a small claim action against the defendant.  The trial court ruled in favor of the defendant.  This appeal followed.

On appeal, the plaintiff argues that the trial court erred by failing to rule that the defendant breached the implied warranty of merchantability.  He contends that, to the extent that the trial court found that he waived this implied warranty, the court erred.  Because we conclude that the implied warranty was not breached, we do not reach the plaintiff's waiver arguments.

Resolving the issues on appeal requires that we engage in statutory interpretation.  "Statutory interpretation is a question of law, which we review de novo."  Appeal of Local Gov't Ctr., 165 N.H. 790, 804 (2014).  "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole."  Id.  "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning."  Id.

2

The implied warranty of merchantability is set forth in RSA 382-A:2-314, which is part of the Uniform Commercial Code (UCC). When we interpret the UCC, we "rely not only upon our ordinary rules of statutory construction, but also upon the official comments to the UCC." Rabbia v. Rocha, 162 N.H. 734, 738 (2011); see RSA 382-A:1-103(a)(3) (2011) (providing that the UCC must be construed to make uniform the law in various jurisdictions).

RSA 382-A:2-314 provides:

(1) Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity with each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

(3) Unless excluded or modified (Section 2-316) other implied warranties may arise from course of dealing or usage of trade.

The official comments to RSA 382-A:2-314 explain that "[t]he question when the warranty is imposed turns basically on the meaning of the terms of the agreement as recognized in the trade." RSA 382-A:2-314 cmt. 2. "Goods delivered under an agreement made by a merchant in a given line of trade must be of a quality comparable to that generally acceptable in that line of trade under the description or other designation of the goods used in the agreement." Id. With regard to used goods, the official comments state that a contract for

3

such goods "involves only such obligation as is appropriate to such goods for that is their contract description."  RSA 382-A:2-314 cmt. 3.

Here, the defendant sold the plaintiff a used motor vehicle that was expressly described as one that "will not pass a New Hampshire inspection, is unsafe for operation, and cannot be driven on the ways of this state."  (Bolding and emphasis omitted.)  Given this description, the fact that the vehicle is, in fact, unsafe and that it failed a motor vehicle inspection did not constitute a breach of the implied warranty of merchantability.  In other words, the subject vehicle was merchantable within the meaning of the parties' contract.  Accordingly, we conclude that the trial court did not err when it entered judgment for the defendant on the plaintiff's breach of implied warranty of merchantability claim.

In arguing for a contrary result, the plaintiff relies upon cases from other jurisdictions in which courts have found that the condition of a used motor vehicle violated the implied warranty of merchantability.  His reliance upon those cases is misplaced.  Unlike the vehicle in this case, the vehicles in the cases upon which the plaintiff relies were not sold as vehicles that were "unsafe for operation."  According to the amicus curiae, "New Hampshire is unique among the states because it allows the sale of unsafe vehicles to the public."  See RSA ch. 358-F (2009).  Ordinarily, "[f]or a motor vehicle to be 'merchantable', i.e. fit for the ordinary purposes for which such a motor vehicle is used, it should be able to be used on a public highway."  Kimpel v. Delaware Public Auto Auction, No. CIV.A.-2000-02-224, 2001 WL 1555932, at *3 (Del. Ct. Com. Pl. Mar. 6, 2001).  However, such is not the case when, as here, a motor vehicle is sold as one that is "unsafe for operation" and that "cannot be driven on the ways of this state."  (Bolding and emphasis omitted.)

Affirmed.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.