NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2017-0658

MICHELLE CLARK

v.

NEW HAMPSHIRE DEPARTMENT OF EMPLOYMENT SECURITY & a.

Argued:  October 11, 2018
Opinion Issued:  January 11, 2019

Law Office of Leslie H. Johnson, PLLC, of Center Sandwich (Leslie H. Johnson on the brief and orally), for the plaintiff.

Gordon J. MacDonald, attorney general (Lynmarie C. Cusack, senior assistant attorney general, on the brief and orally), for the defendants.

DONOVAN, J.  The plaintiff, Michelle Clark, appeals an order of the Superior Court (McNamara, J.) granting summary judgment to the defendants, the New Hampshire Department of Employment Security, Dianne M. Carpenter, Darrell L. Gates, Sandra Jamak, Colleen S. O'Neill, Tara G. Reardon, and Gloria J. Timmons, on the plaintiff's claims alleging a violation of the Whistleblowers' Protection Act, see RSA 275-E:2, II (Supp. 2018), and the Public Employee Freedom of Expression Act, see RSA 98-E:1 (2013).  She also appeals an order of the Superior Court (Smukler, J.) dismissing her claim of wrongful discharge/demotion against DES.  We affirm in part, reverse in part, and remand.

The record, viewed in the light most favorable to the plaintiff, supports the following facts. The plaintiff and the individual defendants are all current or former employees of DES. The plaintiff has been employed by DES since the mid-1990s. In October 2010, she was promoted to a supervisor position in the Benefit Support Unit in DES's Unemployment Compensation Bureau, which was a position in labor grade 21, step 7.[1] At step 7, she received an hourly rate of $25.01 and worked in Manchester.

As a supervisor, she was responsible for supervising approximately fifteen employees, including three interns, two of whom were children of two named defendants. In March 2011, the plaintiff received her first performance evaluation for the period of October 2010 through January 2011. The performance evaluation was positive and, according to the plaintiff, her supervisor, Timmons, promised her that she would be promoted to labor grade 24 "in a few weeks."

During this timeframe, the plaintiff became concerned about issues relating to her interns' hours and responsibilities and their behavior in the workplace. The plaintiff communicated some of these concerns to Timmons and Carpenter, the director of the Unemployment Compensation Bureau. According to the plaintiff, she sought to address her concerns regarding the interns with her union representatives, but Timmons and Carpenter tried to prevent her from doing so.

At some point, the plaintiff also suspected that her supervisors had altered a review she had prepared for an employee under her supervision because the employee had complained about the interns and Timmons' management. The plaintiff alleges that a state senator was going to attend the employee's review, but Timmons ordered the plaintiff not to speak to the senator. The plaintiff contends that she was therefore not permitted to attend the employee's review or speak to the senator.

In July 2011, the plaintiff received her second performance evaluation for the period covering January through April 2011. The second evaluation was negative, and she did not receive her promised promotion. Shortly thereafter, on August 2, 2011, the plaintiff received a letter from a DES Human Resources Administrator, informing her that she would be laid off on August 18, 2011. Pursuant to a mandatory reduction in force, the other employees in her unit were also laid off. However, prior to her layoff date, the plaintiff accepted a

---

[1] "Labor grade" represents the salary range established for each class of positions in the state classified service for state employees. N.H. Admin. R., Per 102.13, 102.17, 102.37, 102.57, 102.65. At the time of this appeal, the 35 labor grades each contain eight "steps." RSA 99:1-a (Supp. 2018). But see Laws 2018, 162:6 (eff. Jan. 4, 2019) (setting forth nine steps). The steps represent "the intervals between the minimum and the maximum range of pay established for each [labor] grade." N.H. Admin. R., Per 102.66. Step 1 has the lowest salary of each labor grade and step 8 has the highest. RSA 99:1-a.

2

demotion to the position of Program Assistant I in lieu of a layoff, which began on August 19, 2011. This new position was in labor grade 12, step 8, with an hourly rate of $17.88, and required her to commute to Concord. At some time during that month, the plaintiff met with Reardon, who was the commissioner of DES, and discussed, among other things, issues pertaining to at least one intern.

In September 2011, the plaintiff appealed her demotion to the New Hampshire Personnel Appeals Board (PAB) through a grievance representative from her union. In her appeal, she alleged that she was unlawfully demoted in response to raising concerns about the hours and behavior of the interns. During the pendency of the appeal, she was represented by counsel provided by her union and discussed issues relating to the interns with other representatives from her union, including the union president.

The plaintiff alleges that she experienced various forms of harassment during this period, which she contends was for the purpose of retaliation: her car was "egged" in the DES parking lot, her home mailbox was smashed, and she received anonymous phone calls and mail at home and at work. As a result of distress from these incidents, the plaintiff went on medical leave from December 2011 to February 2012.

In addition to her PAB appeal, the plaintiff communicated with other state agencies about the intern issues and the harassment she was experiencing: in May 2012, she filed a complaint with the New Hampshire Executive Branch Ethics Committee against Reardon for failing to address misuse of the hiring system, nepotism, and harassment; in June 2012, she filed a whistleblower complaint with the New Hampshire Department of Labor against DES on similar grounds; and, at some point, she participated in an investigation of DES by the New Hampshire Attorney General's Office.

In July 2012, the Governor and Executive Council appointed George Copadis as interim commissioner of DES. A few weeks later, Copadis met with the plaintiff to discuss the issues she had with the agency. Subsequently, by letter dated February 6, 2013, Copadis informed the plaintiff that he intended to reinstate her to a position of "like seniority, status and pay equal to that which [she] had" prior to her demotion, provide her with back pay from her date of demotion through February 7, 2013, and remove the negative performance evaluation from her personnel file. The letter stated that the plaintiff would "continue in [her] role as a Quality Control Investigator," a position in labor grade 21, which the plaintiff obtained in November 2012, but would be moved from step 1 to step 7. Copadis also recommended her for the Level 1, Public Supervisor Program in the 2013 Certified Public Manager Course, which would allow her to "enhance management skills and increase knowledge of government practices." Finally, Copadis arranged for the plaintiff to work in Manchester rather than Concord "until the Tobey Building is ready

to be occupied by the department," citing the plaintiff's "continued concerns regarding the drive to Concord where [she] had formerly been assigned to the Manchester office."

Following this decision, the plaintiff received back pay and Medicare and retirement benefits, and she withdrew her PAB appeal. At some point, she also withdrew her whistleblower complaint.

The plaintiff currently holds the position of Quality Control Investigator at step 8, the highest step in labor grade 21. According to the plaintiff, she does not have any supervisory duties and cannot receive a wage increase unless she becomes a supervisor. She has applied unsuccessfully for supervisory positions, and contends that she continues to experience harassment by certain unknown DES employees.

In May 2014, the plaintiff filed this action against the defendants alleging several claims: (1) violation of the Whistleblowers' Protection Act under RSA chapter 275-E; (2) wrongful discharge/demotion; (3) violation of the Public Employee Freedom of Expression Act under RSA chapter 98-E; (4) intentional infliction of emotional distress (IIED); (5) interference with a contract; (6) violation of the plaintiff's rights under Part I, Articles 22 and 32 of the New Hampshire Constitution; and (7) violation of the plaintiff's rights under the First Amendment to the United States Constitution. Her complaint seeks several remedies, including, inter alia, compensatory and enhanced compensatory damages, back pay, fringe benefits, future wages, loss of earning capacity, attorney's fees and costs, reinstatement to her former position, and injunctive relief.

The defendants moved to dismiss all of the plaintiff's claims for failure to state a claim for which relief may be granted. The defendants also argued that various theories of immunity bar the plaintiff's action. The Trial Court (Smukler, J.) granted the motion as to the plaintiff's wrongful discharge/demotion claim, ruling that her complaint failed to state a claim for which relief may be granted because: (1) she accepted a different position with DES when her unit was subject to the layoff and therefore remained employed with DES; and (2) New Hampshire does not recognize a cause of action for wrongful demotion. With respect to the remaining claims, the trial court ruled that her complaint was "susceptible of a construction that would permit recovery" but denied the motion without prejudice to allow the court to hold an evidentiary hearing to determine whether the remaining claims were barred by immunity. Following a six-day evidentiary hearing, the Trial Court (Mangones, J.) ruled that the defendants were entitled to immunity on the plaintiff's IIED and interference with contractual relations claims, as well as her state and federal constitutional claims, and dismissed those claims.

4

The defendants then moved for summary judgment on the plaintiff's remaining whistleblower and freedom of expression claims. The Trial Court (McNamara, J.) granted the motion, finding that: (1) the plaintiff has already received the statutory remedies available to her under RSA chapter 275-E; and (2) the plaintiff failed to establish that she "engaged in public discourse" on issues relating to DES, which the trial court ruled was required under RSA chapter 98-E. The plaintiff unsuccessfully moved for reconsideration of the trial court's summary judgment order, and this appeal followed.

I. Motion to Dismiss

We first address the plaintiff's arguments challenging the trial court's dismissal of her wrongful discharge/demotion claim. We note that the plaintiff does not appeal the trial court's dismissal of her IIED and interference with contractual relations claims or her state and federal constitutional claims.

In reviewing a trial court's grant of a motion to dismiss, we consider whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery. Cluff-Landry v. Roman Catholic Bishop of Manchester, 169 N.H. 670, 673 (2017). We assume the plaintiff's pleadings to be true and construe all reasonable inferences in the light most favorable to her. Id. However, we need not assume the truth of statements in the plaintiff's pleadings that are merely conclusions of law. Id. We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law. Id. We will uphold the trial court's grant of a motion to dismiss if the facts pleaded do not constitute a basis for legal relief. Ramos v. Warden, N.H. State Prison, 169 N.H. 657, 658 (2017).

We assume, without deciding, that a wrongful discharge claim by a classified employee may be brought against the State. In dismissing the defendant's wrongful discharge claim, the trial court determined that, based upon the facts in the complaint, the plaintiff's employment with DES did not end because she took another position with DES when her unit was subject to the layoff. Therefore, the trial court concluded that she failed to state a claim for which relief may be granted "[b]ecause a wrongful termination case necessarily requires a plaintiff to be terminated from employment." As to the plaintiff's claim that she was wrongfully demoted, the trial court ruled that "New Hampshire does not recognize a cause of action for 'wrongful demotion,'" and declined her invitation to adopt such a cause of action.

The plaintiff does not dispute the trial court's finding that her employment with DES did not end despite her receipt of the layoff letter. However, relying upon our decision in Cluff-Landry, the plaintiff argues that the trial court erred in dismissing her claim because termination of her employment occurred when she received notice that she would be laid off. We disagree.

5

In Cluff-Landry, we held that the plaintiff's cause of action for wrongful discharge began to accrue, for statute of limitations purposes, when she received notice that her contract would not be renewed, rather than on her last day of employment, which was over two months later. Cluff-Landry, 169 N.H. at 677-78. We reached this conclusion because her wrongful discharge claim was based on her employer's decision not to renew her contract, and, at the time she received the notice, all of the elements required to prove wrongful discharge were present. Id.; Leeds v. BAE Sys., 165 N.H. 376, 379 (2013) (wrongful discharge requires proof that: (1) the discharge was motivated by bad faith, retaliation, or malice; and (2) the plaintiff was discharged for performing an act that public policy would encourage or for refusing to do something that public policy would condemn); see also Jeffery v. City of Nashua, 163 N.H. 683, 688 (2012) (holding that the plaintiff's constructive discharge claim began to accrue for statute of limitations purposes on the date she tendered her resignation, rather than the last day of her employment). Moreover, the plaintiff in Cluff-Landry was not subsequently retained by the employer in any capacity; rather, she was "non-renewed." Cluff-Landry, 169 N.H at 678.

Here, the plaintiff's wrongful discharge claim is based upon DES's decision to lay her off. However, unlike the employer in Cluff-Landry, DES offered the plaintiff a different position within the agency in lieu of the layoff. By extending this offer, DES, in effect, withdrew its decision to lay her off. Therefore, to the extent that the plaintiff may have had a cause of action for wrongful discharge at the time she received notice of the impending layoff, that cause of action became moot when DES offered her a demotion before the layoff took effect. See Sullivan v. Town of Hampton Bd. of Selectmen, 153 N.H. 690, 692 (2006) ("The doctrine of mootness is designed to avoid deciding issues that have become academic or dead." (quotation omitted)).

The plaintiff argues that we should consider her acceptance of the demotion as if she had applied for a job elsewhere because she accepted the demotion only to mitigate the damages she would incur from termination. We disagree. We have recognized only one exception — constructive discharge — to the termination component of a wrongful discharge claim. See Karch v. BayBank FSB, 147 N.H. 525, 536 (2002). In the constructive discharge context we recognized in Karch, the end of the plaintiff's employment resulted from resignation rather than termination. Id. ("Constructive discharge occurs when an employer renders an employee's working conditions so difficult and intolerable that a reasonable person would feel forced to resign," which "satisfies the termination component of a wrongful discharge claim." (quotation omitted)). In both cases, the employment relationship is discontinued. But, even if an employee experiences difficult working conditions due to an employer's retaliatory actions, we have not recognized a claim for wrongful discharge when the employment did not come to an end. Accordingly, we agree with the trial court's conclusion that the plaintiff has failed to establish a cause of action for wrongful discharge.

6

The plaintiff next argues that "[t]he theory behind wrongful discharge" supports extending it to encompass circumstances in which an employer has demoted, but not terminated, an employee for retaliatory purposes. Raising an issue of first impression for this court, the plaintiff invites us to recognize a cause of action for wrongful demotion. We decline her invitation.

As in any case in which we are asked to recognize a new cause of action, it is a question of policy whether it would be wise to provide the relief that the plaintiff seeks. Aranson v. Schroeder, 140 N.H. 359, 363-64 (1995). Answering this question requires us to take two separate steps: we must determine whether the interest that the plaintiff asserts should receive any legal recognition and, if so, whether the relief that the plaintiff requests would be an appropriate way to recognize the asserted interest. Id. at 364 (quotation omitted). In deciding this question, we keep in mind that the New Hampshire Constitution entitles every subject of this state "to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character . . . ." N.H. CONST. pt. I, art. 14; see Aranson, 140 N.H. at 364.

We begin by addressing the first step: whether an employee's interest in maintaining her position without fear of demotion based on bad faith, malice, or retaliation should receive legal recognition. Aranson, 140 N.H. at 364; see also Monge v. Beebe Rubber Co., 114 N.H. 130, 133 (1974). In Monge, we recognized for the first time a cause of action for wrongful discharge. Monge, 114 N.H. at 133. In determining whether to recognize this cause of action, we balanced "the employer's interest in running his business as he sees fit . . . against the interest of the employee in maintaining his employment, and the public's interest in maintaining a proper balance between the two." Id. In balancing these interests, we held that termination of an at-will employment contract based on bad faith, malice, or retaliation "is not in the best interest of the economic system or the public good." Id. We reasoned that "[s]uch a rule affords the employee a certain stability of employment and does not interfere with the employer's normal exercise of his right to discharge, which is necessary to permit him to operate his business efficiently and profitably." Id.

In balancing these same interests, we acknowledge an employee's interest in maintaining his or her position without fear of retaliatory demotion by his or her employer. However, the consequences of expanding judicial review to an employer's decision to demote carries with it significantly greater risks of interfering with an employer's ability to "operate his business efficiently and profitably" than that of wrongful discharge. Id. Wrongful discharge permits judicial intervention only where an employer takes the serious action of discharging an employee, which results in the termination of the employee's pay and benefits and may adversely affect the employee's ability to find new employment. A cause of action for wrongful demotion, however, would extend the reach of this judicial intervention from an employer's right to discharge an employee to its right to manage its employees' duties and responsibilities in the

7

workplace. Therefore, recognizing wrongful demotion as a cause of action would require courts to become "increasingly involved in the resolution of workplace disputes," Zimmerman v. Buchheit of Sparta, Inc., 645 N.E.2d 877, 882 (Ill. 1994), which involve decisions that result in less serious consequences for employees than a discharge.

Moreover, we agree with the Illinois Supreme Court that replacing the element of "discharge" with "demotion" has the potential to render an otherwise narrow cause of action into an "ill-defined, and potentially all-encompassing concept of retaliatory conduct or discrimination." Id. In rejecting a claim of retaliatory demotion, the court noted:

> Although the term "demotion" may appear amenable to clear definition, many questions arise: Is a demotion in title or status, but not salary, actionable? Could a transfer from one department to another be considered a demotion? Would it be fair to characterize as a demotion a significant increase in an employee's duties without an increase in salary?

Id.; see also Mintz v. Bell Atl. Sys. Leasing Int'l, Inc., 905 P.2d 559, 562 (Ariz. Ct. App. 1995) (declining to recognize wrongful failure-to-promote as a cause of action because it "could subject employers to torrents of unwarranted and vexatious suits," which could involve not only demotions but also transfers, alterations in job duties, and disciplinary hearings (quotation omitted)). Opening the door to these questions would expand the limited interference into an employer's management of its business that we allowed when we recognized wrongful discharge as a cause of action. See Monge, 114 N.H. at 133.

The plaintiff urges us to consider cases from two other jurisdictions that have extended wrongful discharge to encompass claims of retaliatory demotion. See Trosper v. Bag 'N Save, 734 N.W. 2d 704, 711 (Neb. 2007); Brigham v. Dillon Cos., Inc., 935 P.2d 1054, 1059-60 (Kan. 1997). However, we do not agree with their reasoning that holding otherwise would allow employers to escape consequences for retaliating against an employee by demoting, rather than discharging, the employee, see Trosper, 734 N.W. 2d at 711; Brigham, 935 P.2d at 1059-60, as New Hampshire law provides statutory protections to employees who experience retaliation for disclosing or refusing to participate in an employer's unlawful activity. See, e.g., RSA 275-E:2 (Supp. 2018) (providing an employee the ability to pursue a civil suit where an employer has "harass[ed], abuse[d], intimidate[d], discharge[d], threaten[ed], or otherwise discriminate[d] against" an employee "regarding [such employee's] compensation, terms, conditions, location, or privileges of employment" in retaliation for whistleblower activity); RSA 275-E:4, I (2010) (providing an aggrieved employee the ability to request a hearing with the labor commissioner for same, after the employee has made a reasonable effort to

maintain and restore his or her rights through any grievance procedure or similar process available at his or her place of employment).

Accordingly, in balancing the employee's interest in employment stability and the employer's interest in running its business as it sees fit, we conclude that adopting wrongful demotion as a cause of action would interfere with the employer's right to manage its workplace, including its decisions relating to the duties, responsibilities, and pay of its employees. Because we determine that the interest that the plaintiff asserts should not receive legal recognition in the common law, we need not address the second step in this inquiry. Aranson, 140 N.H. at 364 (whether the relief that the plaintiff requests would be an appropriate way to recognize it). Accordingly, we decline to recognize a common law cause of action for wrongful demotion and affirm the trial court's dismissal of the plaintiff's wrongful discharge/demotion claim.

Because we conclude that there is no common law cause of action for a wrongful demotion, we need not address the State's argument that common law employment claims are limited to "at-will" employees and are not available to public employees in classified, merit-based systems.

II. Motion for Summary Judgment

We turn next to the plaintiff's arguments that the trial court erred in granting summary judgment to the defendants on her freedom of expression and whistleblower claims.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. Weaver v. Stewart, 169 N.H. 420, 425 (2016). If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. Id. We review the trial court's application of the law to the facts de novo. Id.

A. Freedom of Expression Act

Pursuant to RSA chapter 98-E (2013), New Hampshire's Public Employee Freedom of Expression Act, every public employee has "a full right to publicly discuss and give opinions as an individual on all matters concerning any government entity and its policies." RSA 98-E:1. The stated intention of this chapter is "to balance the rights of expression of the employee with the need of the employer to protect legitimate confidential records, communications, and proceedings." Id. Accordingly, this chapter prohibits any person from interfering "in any way with the right of freedom of speech, full criticism, or disclosure by any public employee," RSA 98-E:2 (2013), as long as the content

9

of that expression is not subject to laws relating to confidential or privileged records, RSA 98-E:3 (2013).

In granting summary judgment to the defendants on this claim, the trial court determined that the plaintiff failed to demonstrate that she "engaged in public discourse" on matters concerning DES because she provided no evidence "that she discussed matters with anyone outside the State government" and raised concerns only with "the people to whom she would be expected to raise her concerns as a State employee." As for the plaintiff's attempt to speak with the state senator, the trial court found that, had the plaintiff spoken with her, the discussion would not have fallen under the statute because she would have spoken to the senator in a confidential setting and only in her role as a supervisor.

The plaintiff argues that the trial court erred in granting summary judgment on her freedom of expression claim because the statute does not require her to speak publicly. She further asserts that she nonetheless has, "at times," spoken publicly.

The plaintiff's argument requires that we interpret the language of the statute. Statutory interpretation is a question of law, which we review de novo. Roy v. Quality Pro Auto, LLC, 168 N.H. 517, 519 (2016). In matters of statutory interpretation, we are the final arbiters of the intent of the legislature as expressed in the words of the statute considered as a whole. Id. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written, and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Olson v. Town of Grafton, 168 N.H. 563, 566 (2016). When the language of a statute is plain and unambiguous, we need not look beyond the statute itself for further evidence of legislative intent. Id.

We have previously held that RSA 98-E:1 provides broader protections to public employees than does federal law because the statute protects expression on all matters relating to the public employer and its policies except for matters that are confidential or privileged in nature. Booker, 139 N.H. at 340-41; cf. Pickering v. Board of Education, 391 U.S. 563, 568 (1968) (protecting a public employer's speech on matters of public concern); Bennett v. Thomson, 116 N.H. 453, 458-59 (1976) (applying Pickering standard). However, unlike federal law, RSA 98-E:1 limits its protection to expression discussed "publicly." Compare RSA 98-E:1 (providing the right of public employees to "publicly discuss and give opinions" (emphasis added)), with Garcetti v. Ceballos, 547 U.S. 410, 420 (2006) ("Employees in some cases may receive First Amendment protection for expressions made at work."), and Givhan v. W. Line Consol. Sch. Dist., 439 U.S. 410, 413 (1979) (public school teacher's private expression of her opinion to the school's principal was not "beyond [federal] constitutional protection").

The statute does not define the word "publicly," and thus we look to its common usage, using the dictionary for guidance. State v. Brawley, 171 N.H. ___, ___ (decided September 18, 2018) (slip op. at 8). Webster's Third International Dictionary defines "publicly" as: "in a manner observable by or a place accessible to the public: openly, obviously." Webster's Third International Dictionary 1836 (unabridged ed. 2002). Therefore, while the statute expands the scope of the subject matter that receives protection, it limits that protection to expressions that the public may observe or access. See RSA 98-E:1.

The plaintiff points to language in RSA 98-E:2 to assert that the statute does not require expression to occur in "a particular forum" because the freedom of "disclosure" and "full criticism" are "expansive." See RSA 98-E:2 ("No person shall interfere in any way with the right of freedom of speech, full criticism, or disclosure by any public employee."). These words, however, refer to the types of expression that are protected by the statute; they do not have any bearing on whether such disclosures or full criticism must be made "publicly." Additionally, the plaintiff points to RSA 98-E:3 to assert that "publicly" merely refers to any expression that is not considered confidential or privileged. See RSA 98-E:3. RSA 98-E:3, however, excludes expression on confidential or privileged records from the statute's protection; it has no effect on the requirement under RSA 98-E:1 that expression be made "publicly." RSA 98-E:3 ("Nothing in this chapter shall suspend or affect any law relating to confidential and privileged records or communications."). Because we must interpret the statute as a whole and presume that the legislature does not use superfluous language, State v. Duran, 158 N.H. 146, 155 (2008), we conclude that the speech, disclosure, and full criticism of non-confidential and non-privileged content must be discussed "publicly" to receive protection under the statute. See RSA 98-E:1-:3.

Our inquiry does not end here, however, because the plaintiff contends that she did, "at times," speak publicly. In granting summary judgment to the defendants on this claim, the trial court concluded that the plaintiff failed to provide evidence that she "engaged in public discourse" based only on the fact that she communicated with state employees to whom she would have been expected to speak; the trial court did not determine whether those communications occurred "publicly" within the meaning of the statute. Construing "publicly" in light of the broad protections of the statute, see Booker, 139 N.H. at 340-41, we cannot conclude that it was intended to categorically exclude a public employee's communications with other public employees from protection under the statute. Rather, the word "publicly" excludes a public employee's communications with other public employees only if the communications could not be observed or accessed by members of the public.

11

Here, the plaintiff asserts that all of her conversations are protected by the statute, including her conversations with her own supervisors. Based on the plain meaning of "publicly," we cannot conclude that the expression protected by the statute was intended to include private conversations behind closed doors, as such conversations would not be accessible to the public unless a public record of the meeting was created and published. To interpret the statute otherwise would require us to treat the word "publicly" as if it were superfluous. See Duran, 158 N.H. at 155. Nevertheless, the record demonstrates that the plaintiff communicated with numerous individuals, inside and outside of DES, about the issues within the agency, including the Attorney General's Office and her union representatives. The plaintiff also filed complaints with the Executive Ethics Committee and the Department of Labor. While the trial court correctly concluded that she spoke only with state employees, it did not determine if a genuine issue of material fact exists as to whether these communications, such as her ethics and whistleblower complaints, could be observed or accessed by the public.

We also must consider the plaintiff's assertion that she was barred from speaking with a state senator about an allegedly falsified review of one of her subordinates. The trial court concluded that any discussion with the senator would have been confidential and conducted only in the plaintiff's capacity as a supervisor. However, our review of the record reveals a genuine dispute of material fact as to this issue. In the plaintiff's affidavit, she states:

> Timmons ordered me not to speak to [the state senator], who was going to [the employee's] review, as Timmons did not want me to tell [the employee] that her review had been altered from what I, [as the employee's] supervisor had written. It was altered because of [the employee's] complaints about interns, and Timmons' management. I refused to sign [the employee's] falsified review and was not allowed to attend the review, or talk to the Senator.

Based on this allegation, viewed in the light most favorable to the plaintiff, Timmons' order not to speak with the senator was not limited to the review; rather, her order prohibited the plaintiff from speaking to the state senator generally. Furthermore, according to the plaintiff, Timmons gave this order for the purpose of prohibiting the plaintiff from discussing the agency's allegedly retaliatory actions toward another employee. Thus, even assuming the review that the plaintiff sought to attend was "confidential," Timmons' directive to the plaintiff was not limited to the review or to confidential information that may have been discussed at the review. Instead, Timmons' order barred her from speaking to the state senator at all.

Moreover, the fact that the plaintiff was the employee's supervisor at the time she attempted to speak to the state senator does not, in and of itself, suggest that the plaintiff was speaking solely on behalf of her employer. See

Booker, 139 N.H. at 341 (considering the relevant distinction between one's "individual" capacity under RSA 98-E:1 and professional capacity to be "whether the petitioner spoke as an individual or as a spokesperson for [the agency], rather than whether he spoke as a citizen or as a citizen who happens to be an employee of [the agency]"). To the contrary, her desire to speak about allegations of wrongdoing by DES employees demonstrates that she sought to speak as an individual, not as a spokesperson on behalf of her employer. Therefore, the record demonstrates that genuine issues of material fact exist as to whether the plaintiff's anticipated discussion with the state senator would have been either confidential in nature or only conducted in her capacity as supervisor.

For these reasons, we conclude that the trial court erred in granting summary judgment to the defendants on the plaintiff's freedom of expression claim and accordingly remand for further proceedings consistent with this opinion.

### B. Whistleblowers' Protection Act

We now turn to the plaintiff's challenge to the trial court's granting of summary judgment to the defendants on her whistleblower claim. New Hampshire's Whistleblowers' Protection Act (the Act) prohibits employers from retaliating against an employee for reporting or refusing to participate in what he or she reasonably believes is a violation of the law, or for participating in an investigation into allegations that the employer has violated the law. RSA 275-E:2, I(a)-(c); Appeal of N.H. Dept. of Employment Security, 140 N.H. 703, 708 (1996). The Act provides two avenues by which an aggrieved employee may obtain relief for a whistleblower violation. Under RSA 275-E:2, II, the employee "may bring a civil suit within 3 years of the alleged violation." Under RSA 275-E:4, I, an employee may "obtain a hearing with the commissioner of labor or a designee appointed by the commissioner" after the employee "has first made a reasonable effort to maintain or restore such employee's rights through any grievance procedure or similar process available at such employee's place of employment."

The statute expressly authorizes equitable remedies. RSA 275-E:2, II; RSA 275-E:4, I. When an employee brings a civil suit under RSA 275-E:2, II, "[t]he court may order reinstatement and back-pay, as well as reasonable attorney fees and costs, to the prevailing party." Similarly, following a hearing with the labor commissioner under RSA 275-E:4, I, the labor commissioner "shall order, as the commissioner or his designee considers appropriate, reinstatement of the employee, the payment of back pay, fringe benefits and seniority rights, any appropriate injunctive relief, or any combination of these remedies."

Though the plaintiff filed a whistleblower complaint with the Department of Labor, she withdrew her complaint and later brought her whistleblower claim to superior court under RSA 275-E:2, II. In doing so, she sought numerous forms of relief, including compensatory damages, back pay, fringe benefits, front pay, reinstatement to her former position or one that is "comparable or better," mileage reimbursements, depletion of sick and annual leave balances, counseling costs, reasonable attorney's fees, and injunctive relief. Granting summary judgment in favor of the defendants, the trial court made no determination as to whether there was a genuine dispute of material fact on the merits of the plaintiff's claim. Instead, the trial court focused on the remedies she sought. After analyzing her requested remedies in light of all forms of relief available in RSA chapter 275-E, the trial court found that the plaintiff had already received all of the equitable remedies available because she was reinstated to the same labor grade and pay rate she held prior to her demotion and received back pay to reimburse her for the income she would have received if she had not been demoted. Furthermore, the trial court determined that the Act limits relief to equitable remedies and does not authorize compensatory damages. Determining that the plaintiff "has already been provided [with] the statutory remedies available to her," the trial court granted summary judgment in favor of the defendants.

The plaintiff does not dispute that she was reinstated to a position in the same labor grade and pay rate as the position she held before she accepted the demotion, nor does she dispute that she received an amount in back pay from DES equal to the amount she would have earned had she remained in labor grade 21, step 7. However, she argues that the trial court erred in granting summary judgment, because: (1) the Act cannot be construed to preclude compensatory damages based on its plain language and remedial nature; and (2) even if the Act does not authorize compensatory damages, she is entitled to seek a number of equitable remedies authorized by the Act that she has not received. We begin with the plaintiff's argument on compensatory damages.

In viewing the statute as a whole, it expressly authorizes only equitable remedies. RSA 275-E:2, II; RSA 275-E:4, I; see also Appeal of Bio Energy, 135 N.H. 517, 521-22 (1992) (back pay is part of the injunctive remedy, rather than damages, because it seeks to make the aggrieved employee "whole") (decided under prior law that did not explicitly include back pay as a remedy). Moreover, the statute limits the type of equitable remedies available by enumerating specific forms of equitable relief. RSA 275-E:2, II; RSA 275-E:4, I. The legislature could have expressly included compensatory damages within the enumerated remedies if it intended to authorize such an award. However, it did not do so, and, therefore, we will not consider what the legislature might have said or add language to the statute that the legislature did not see fit to include. Olson, 168 N.H. at 566; see E.D. Swett, Inc. v. N.H. Comm. for Human Rts., 124 N.H. 404, 411-12 (1983) (declining to hold that a statute that enumerates only equitable remedies also authorizes compensatory damages).

14

Although the statute does not expressly authorize compensatory damages, the plaintiff argues that the phrase "civil suit" in RSA 275-E:2, II was "intended to broaden the scope of [the] relief" to include damages that may be awarded by a jury. We disagree. Viewing the phrase in the context of RSA 275-E:2, II, the language refers to the type of action an aggrieved employee may bring to obtain such equitable relief; it does not refer to the forms of relief, which appear in the following sentence. Moreover, considering the evident goals of the statute — "to encourage employees to come forward and report violations without fear of losing their jobs and to ensure that as many alleged violations as possible are resolved informally within the workplace" — we conclude that equitable relief accomplishes these remedial goals. Bio Energy, 135 N.H. at 521 (providing back pay allows the victim to come forward without fear of monetary punishment); see also Appeal of Hardy, 154 N.H. 805, 818 (2007) (the absence of an award of reasonable attorney's fees could "frustrate the Whistleblowers' Protection Act's purpose of encouraging employees to report violations"). Contrary to the plaintiff's argument that compensatory damages provide the only form of relief to an employee who experiences retaliation but does not lose his or her job, the Act provides "any appropriate injunctive relief" under RSA 275-E:4, I. For these reasons, we conclude that the phrase "civil suit" does not authorize an award of compensatory damages.

Next, the plaintiff argues that, even if the Act does not authorize compensatory damages, the trial court erred in determining that she already received the equitable remedies available under the Act. The plaintiff first asserts that she should be allowed to pursue reinstatement to a higher labor grade and back pay consistent with that labor grade, because there is a genuine dispute of material fact as to whether she would have been promoted to labor grade 24 if the defendants had not unlawfully retaliated against her. As support for this argument, the plaintiff relies upon Timmons' verbal promise that she would be promoted to labor grade 24 and the labor grade 24 classification of other supervisors in the department, who she claimed to be "outperforming."

To defeat a motion for summary judgment, the opposing party's affidavit must contain more than general allegations or denials, and instead must set forth specific facts showing a genuine issue for trial. Hill-Grant Living Trust v. Kearsarge Lighting Precinct, 159 N.H. 529, 535 (2009). Here, the facts cited by the plaintiff on this issue do not establish a genuine issue for trial and are therefore insufficient to defeat the defendants' motion for summary judgment.

New Hampshire has a complex, merit-based state employee classification system that requires adherence to specific procedures to reclassify a position or promote an employee. See generally N.H. Admin. R., Per ch. 300. In this context, a verbal promise made by Timmons, an intermediate supervisor, that the plaintiff would be promoted to a higher labor grade does not provide a basis on which a reasonable fact-finder could determine that the plaintiff would have

been promoted to a higher labor grade in the absence of a specified time frame or other supporting facts. See Pennichuck Corp. v. City of Nashua, 152 N.H. 729, 740 (2005) (determining that the plaintiff's allegations did not create a genuine issue of material fact where "no reasonable fact finder" could base its finding on the plaintiff's allegations).

Similarly, whether other employees in the plaintiff's unit held supervisory positions classified in labor grade 24 does not alone provide a basis for a fact-finder to determine that she would have been assigned to a higher labor grade because she provides no evidence to show that she was performing the same duties or had the same responsibilities as the employees who held those positions. Classifications within the state employee classified service must be "based upon similarity of duties performed and responsibilities assumed so that the same qualifications may reasonably be required for, and the same schedule of pay may be equitably applied to, all positions in the same classification." RSA 21-I:42, II (Supp. 2018). Thus, while other supervisory positions in her unit may have been classified in labor grade 24, the plaintiff provides no support for her conclusory assertion that she was "outperforming" other supervisors. See N.H. Admin. R., Per 303.01(b) (setting forth factors the Director of Personnel must consider in determining whether a position in the classified service might be improperly allocated or classified). Therefore, the trial court properly determined that that there was no genuine issue of material fact as to whether the plaintiff received the remedies — reinstatement and back pay — set forth in the statute.

Next, the plaintiff argues that she is entitled to injunctive relief under the statute and challenges the trial court's determination that she failed to request injunctive relief in her complaint. In denying reconsideration of its order granting summary judgment to the defendants, the trial court concluded that the plaintiff failed to request injunctive relief in her complaint. Contrary to this finding, however, the plaintiff's complaint expressly requests this equitable relief.

Nevertheless, the defendants argue that the plaintiff is not entitled to an injunction as a remedy because she chose to bring her claim in superior court under RSA 275-E:2, II, which does not expressly authorize injunctive relief, rather than maintain her whistleblower claim with the Department of Labor under RSA 275-E:4, I. The plaintiff argues that "[i]t defies common sense" that the Department of Labor could provide greater relief in proceedings than the superior court.

The express remedies authorized in RSA 275-E:2, II — reinstatement, back pay, and reasonable attorney's fees — allow the superior court to provide relief to aggrieved employees who experience retaliation by their employers in the form of a discharge. These limited remedies, however, do not provide relief from other prohibited conduct under the statute, such as ongoing harassment,

16

abuse, intimidation, or threats, as the plaintiff asserts here. RSA 275-E:2, I (prohibiting retaliatory harassment, abuse, intimidation, threats, or other discrimination in addition to retaliatory discharge). Yet, RSA 275-E:4, I, explicitly authorizes the labor commissioner to enjoin all of these unlawful activities by providing the remedy of "any appropriate injunctive relief."

Given the Act's purpose to encourage employees to come forward, see Bio Energy, 135 N.H. at 523, and the court's broad and flexible equitable powers, Benoit v. Cerasaro, 169 N.H. 10, 20 (2016), we see no reason why the legislature would limit the court's authority to address just a fraction of the prohibited conduct enumerated by the statute while providing the labor commissioner with the authority to address all of the prohibited conduct. See RSA 275-E:2, I. However, the plain and unambiguous language of RSA 275-E:2, II does not authorize the court to order injunctive relief as a remedy. While the discrepancy between the remedies available under RSA 275-E:2, II and RSA 275-E:4, I, may present an issue for the legislature's consideration, we will not add language to the statute that the legislature did not see fit to include. Olson, 168 N.H. at 566.

Nevertheless, the superior court is a court of general jurisdiction with authority to entertain equitable actions where no adequate remedy at law exists. Univ. Sys. of N.H. Bd. of Trs. v. Dorfsman, 168 N.H. 450, 454 (2015); see also Benoit, 169 N.H. at 20 ("The court has broad and flexible equitable powers which allow it to shape and adjust the precise relief to the requirements of the particular situation." (quotation omitted)). In the absence of the court's authority to issue injunctive relief to curtail ongoing retaliation that falls short of discharge or demotion, the plaintiff is left without an adequate remedy at law to address behavior expressly prohibited by the statute. Because RSA 275-E:2, II does not provide an adequate remedy to address the ongoing harassment, abuse, or intimidation as alleged by the plaintiff, we conclude that the plaintiff may seek injunctive relief to enjoin any allegedly, ongoing retaliatory behavior based upon the court's general equity jurisdiction.

The defendants nonetheless argue that any claim for injunctive relief against DES is barred by sovereign immunity because the Act does not expressly authorize the court to issue injunctive relief. In New Hampshire courts, a state agency is immune from suit unless there is an applicable statute waiving the State's sovereign immunity. XTL-NH, Inc. v. N.H. State Liquor Comm'n, 170 N.H. 653, 656 (2018). "Any statutory waiver is limited to that which is articulated by the legislature." Id. "[T]hus, New Hampshire courts lack subject matter jurisdiction over an action against the State unless the legislature has prescribed the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted." Id. (quotation omitted).

Our conclusion that the plaintiff may seek injunctive relief against ongoing forms of retaliation is based upon the superior court's general equity jurisdiction rather than an applicable statute. Although RSA 275-E:2, II may constitute a waiver of DES's immunity from suit under the Act, the terms and conditions on which the State consents to be sued include only three remedies: reinstatement, back pay, and reasonable attorney's fees. Therefore, we agree with the defendants that the plaintiff is barred from seeking injunctive relief against DES and may only seek such relief against the individual defendants.[2]

The plaintiff next argues that the trial court erred when it rejected her claim that she may pursue a finding of wrongdoing and reasonable attorney's fees. Because we conclude that the plaintiff is entitled to pursue injunctive relief based upon the court's general equity jurisdiction which requires a finding on the merits, at least as to the alleged ongoing retaliation, we need not address the trial court's ruling on this issue at this time.

Finally, the plaintiff identifies several other remedies she requested in her complaint that the trial court dismissed as unavailable to her under RSA chapter 275-E. These remedies include "lost benefits," loss of future earning capacity, depletion of annual and sick leave balances, mileage reimbursements, medical costs, front pay, and reinstatement to a supervisory position. Although the trial court made specific rulings as to each of these remedies, the plaintiff does not provide any arguments as to why these rulings were erroneous. Instead, she merely restates her requests for relief in her brief. Thus, any challenge to the trial court's rulings on these requests is not sufficiently developed for our review. See State v. Blackmer, 149 N.H. 47, 49 (2003) ("a mere laundry list of complaints regarding adverse rulings by the trial court, without developed legal argument, is insufficient to warrant judicial review" (quotation omitted)).

Because we conclude that the plaintiff is entitled to seek injunctive relief against ongoing retaliation by the individual defendants based upon the court's general equity jurisdiction, we remand the plaintiff's whistleblower protection claim to the trial court. We also note that the plaintiff's claim under RSA 98-E:4, I, expressly entitles her to injunctive relief as part of her freedom of expression claim, which we have also remanded to the trial court. See RSA 98-E:4, I (2013) ("A public employee may seek injunctive relief or maintain a civil action, or both, to recover damages for violation of this chapter in any court of competent jurisdiction by bench or jury trial.").

---

[2] We note that there is nothing in the record before us that indicates that any of the individual defendants have been dismissed from the plaintiff's whistleblower protection and freedom of expression claims.

All arguments the plaintiff raised in her notice of appeal, but did not brief, are deemed waived.  <u>In re Estate of King</u>, 149 N.H. 226, 230 (2003).

<u>Affirmed in part; reversed in part; and remanded</u>.

LYNN, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.