NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2022-0087

GRANITE STATE TRADE SCHOOL, LLC

v.

NEW HAMPSHIRE MECHANICAL LICENSING BOARD & a.

Argued: February 23, 2023
Opinion Issued: May 2, 2023

McGrath Law Firm, PA, of Concord (Daniel J. Corley on the brief and orally), for the plaintiff.

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Nathan W. Kenison-Marvin, assistant attorney general, on the brief and orally), for the defendant.

MACDONALD, C.J. The plaintiff, Granite State Trade School, LLC (GSTS), appeals an order of the Superior Court (Kissinger, J.) granting the motion to dismiss filed by the defendant, the New Hampshire Mechanical Licensing Board (Board).  We affirm.

I

The following facts are supported by the record.  GSTS is a gas training school providing fuel gas fitting training courses and licensing exams in New

Hampshire since 2007. GSTS was approved as a gas training school prior to the adoption of the current gas fitting regulatory framework.

In 2020, the Board directed GSTS to submit to an audit by producing its curriculum, instructor information, and exam materials. See N.H. Admin. R., Saf-Mec 610.02. In response, GSTS brought suit seeking a declaration that "GSTS training and testing is grandfathered and exempt from compliance" with the audit request because its programs predate the current regulations. Alternatively, GSTS asked the trial court to find Rules Saf-Mec 308 and 610 "arbitrary and capricious" because the rules fail to protect the "integrity and security of the program education materials, and exams," and are "overburdensome." GSTS sought to enjoin the Board from: (1) requiring the production of proprietary materials created by GSTS; (2) terminating its training program; and (3) declining to accept certification from GSTS.

The Board moved to dismiss on grounds that GSTS's claims for relief "rest on an erroneous interpretation of law." Following a hearing, the trial court granted the Board's motion. The court ruled that the plain and ordinary meaning of the language contained in Rules Saf-Mec 308 and 610 does not "relieve prior approved programs from their continuing obligations" to comply with the regulatory scheme. The trial court also ruled that Saf-Mec 610 "is a valid exercise of the state's police power and not arbitrary or capricious" and dismissed GSTS's claim that Saf-Mec 308 is arbitrary and capricious.

In addition, after assuming without deciding that GSTS "has a right to protect its materials from the Board," the trial court found that, on balance, "the public benefit enjoyed by" the audit requirement in Saf-Mec 610 "outweigh[ed] the protection of any such right." Given that GSTS's claim for injunctive relief was premised on the success of its claim for declaratory relief, the court declined to issue an injunction. The trial court subsequently denied GSTS's motion for reconsideration. This appeal followed.

On appeal, GSTS raises five issues, including whether: (1) GSTS is "exempt from the audit requirements to provide confidential testing and teaching materials as 'grandfathered'"; (2) Saf-Mec Rules 308 and 610 are "arbitrary and capricious as applied to" GSTS; (3) it is contrary to Saf-Mec 308 and 610 for the Board to discontinue GSTS's training or examination program because GSTS was never previously required to submit confidential materials pursuant to an audit request; (4) the audit requirements are "overly burdensome"; and (5) the Board's audit request and its "retention of confidential testing and technology materials warrant injunctive relief."

II

In reviewing a trial court's grant of a motion to dismiss, we consider whether the allegations in the plaintiff's pleadings are reasonably susceptible of

a construction that would permit recovery. Clark v. N.H. Dep't of Emp't Sec., 171 N.H. 639, 645 (2019). We assume the plaintiff's pleadings to be true and construe all reasonable inferences in the light most favorable to the plaintiff. Id. However, we need not assume the truth of statements in the plaintiff's pleadings that are merely conclusions of law. Id. We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law. Id. We will uphold the trial court's grant of a motion to dismiss if the facts pleaded do not constitute a basis for legal relief. Id.

We review the trial court's interpretations of statutes and administrative rules de novo. See Appeal of N.H. Div. of State Police, 171 N.H. 262, 266 (2018); Appeal of Old Dutch Mustard Co., 166 N.H. 501, 506 (2014) (we use the same principles of construction when interpreting both statutes and regulations). We ascribe the plain and ordinary meanings to the words used, looking at the rule or statutory scheme as a whole. Appeal of N.H. Div. of State Police, 171 N.H. at 267. We construe all parts of a statute or regulation together to effectuate its overall purposes and to avoid absurd or unjust results. Girard v. Town of Plymouth, 172 N.H. 576, 582 (2019). We will not consider what the administrative agency might have said or add language the agency did not see fit to include. Id.

III

The Board was established pursuant to RSA chapter 153. RSA 153:27-a (Supp. 2022). The legislature has declared that RSA chapter 153 "is necessary for the public safety, health, peace and welfare, is remedial in nature, and shall be construed liberally." RSA 153:25 (2014).

In accordance with RSA chapter 153, the Board is required to "[a]dopt rules," "[i]mplement the licensing program," and "[r]eview and approve educational programs and providers." RSA 153:27-a, II(a)-(c) (Supp. 2022). Such rules "shall include . . . [s]tandards regarding requirements for education or its equivalent, field experience or its equivalent in an approved educational setting, and testing for applicants for initial licensure" for fuel gas fitters. RSA 153:28, I(a)(1)-(4) (Supp. 2022). The Board must also adopt rules establishing "[s]tandards for license renewal and continuing education requirements," RSA 153:28, I(b) (Supp. 2022), and "the nature of the examinations required for issuance of" fuel gas fitter licenses, RSA 153:29, I (Supp. 2022). Pursuant to this statutory authority, the Board adopted the rules set forth in Saf-Mec 101-610. See Appeal of Mays, 161 N.H. 470, 473 (2011) (if the legislature so delegates, boards have the authority to promulgate rules "to fill in the details to effectuate the purpose of the statute," so long as those rules do not "add to, detract from, or modify the statute which they are intended to implement" (quotations omitted)).

3

As pertinent here, the approval requirements for new training programs are set forth in Saf-Mec 308.01, and the approval requirements for new testing programs are set forth in Saf-Mec 308.02. Once an applicant for a training program for licensure and/or a testing program has received approval from the Board, such licensing and certification training institution and/or testing program must submit specified information to the Board for evaluation every two years thereafter. N.H. Admin. R., Saf-Mec 610.02. That information includes:

> (a) A list of the courses and programs offered by the institution;
> (b) A list of the educators, including their credentials to teach the subject matter;
> (c) The course outlines including subject matter, order of progression, and how the course complies with the adopted rules for licensure or certification;
> (d) Copies of tests, quizzes, and exams including any and all questions used for licensure or certification;
> (e) A list of exam proctors who are independent from the course instructor;
> (f) Copies of intake application forms along with any policies and procedures for students while in attendance of the course and/or training institution;
> (g) Copies of student handbooks, educational materials, and power point presentations that apply to licensing or certification course(s) offered by the educational provider; and
> (h) Any additional supporting materials requested by the board for evaluation.

N.H. Admin. R., Saf-Mec 610.02.

IV

Relying on Saf-Mec 308.03, GSTS asserts that it is "grandfathered" from complying with the Board's administrative rules. Saf-Mec 308.03 provides that "[t]he passage of these rules shall not be deemed to discontinue the approval of any training or examination program approved prior to the effective date of these rules." N.H. Admin. R., 308.03(c). According to GSTS, because it "was approved long before the Saf-Mec rules were adopted," its "training and testing is grandfathered and exempt from compliance of the audit request . . . as it preexists the regulations."

We agree with the trial court that under its plain language, Saf-Mec 308.03(c) "relates to the scenario where a training program was approved by the state before the [current] rules came into effect" and that, under those circumstances, "the mere existence of the new rules does not extinguish a

4

training program's prior approval." Because GSTS was approved as a gas training school prior to the effective date of the rules set forth in Saf-Mec part 300, it need not reapply to obtain approval as a gas training school. However, we also agree with the trial court that reading Saf-Mec 308.03(c) to exempt prior approved programs from their continuing obligations under Saf-Mec 610.02 "would add language to the rule that the Board did not see fit to include." In addition, as the trial court found, exempting GSTS from complying with Saf-Mec 610 would be "inconsistent with the broader policy sought to be advanced by the regulatory scheme, i.e. that licensees and education programs be kept up to rigorous standards to protect the public from untrained fuel gas fitters." As the Board argues, it would be an absurd result to "effectively . . . shield[]" GSTS's training and testing programs "from any regulatory oversight regardless of whether they are consistent with then-current industry standards and codes."

Alternatively, GSTS argues that Saf-Mec 610 is "arbitrary and capricious." We disagree. The legislature delegated to the Board the power to promulgate rules necessary for the proper execution of RSA chapter 153. See RSA 153:27-a, :28, :29. GSTS does not assert that the Board exceeded its rulemaking authority by promulgating Saf-Mec 610.02. See Appeal of Mays, 161 N.H. at 473. Indeed, it concedes that "the Board has a legitimate reasonable need to review the materials in a convenient manner due to [the] limited number of times they meet." Rather, as we construe its argument, the crux of GSTS's complaint is that it has to surrender its "proprietary materials" to the Board and that doing so jeopardizes "the integrity and security" of the educational materials and exams. The proper remedy is for GSTS to petition the Board to "adopt, amend, or repeal a rule," RSA 541-A:4, I (2021); N.H. Admin. R., Saf-Mec 214.01, regarding how the Board reviews the materials.

GSTS asserts that "[c]ontrary to the Board's representation that the proprietary teaching and testing materials are not subject to 'the right to know' inspection, there is no statute or rule that protects the materials from public view," citing Saf-Mec 104.02(a) (providing that the Board's "administrative office staff shall be the custodian of the board's records, and shall make available upon request those records which are subject to public inspection under RSA 91-A"). Despite the Board's representation, we note that the authority to make a final determination whether its records are subject to a request made under RSA chapter 91-A lies with the judiciary, not the Board. See 38 Endicott St. N. v. State Fire Marshal, 163 N.H. 656, 660 (2012) (interpretation of the Right-to-Know Law, RSA ch. 91-A, presents a question of law); Cloutier v. State Milk Control Board, 92 N.H. 199, 201-02 (1942) ("questions of law belong to the judiciary for final determination, as a necessary deduction of the required separation of the legislative, executive and judicial powers of government"). However, in the absence of a present request under RSA chapter 91-A, the question whether that statute would apply to GSTS's

materials is not before us for determination.  Nonetheless, as discussed above, the Board has the authority to obtain the materials set forth in Saf-Mec 610.02.

We hold that, as a matter of law, the allegations in GSTS's pleadings are not reasonably susceptible of a construction that would permit recovery.  <u>See</u> <u>Clark</u>, 171 N.H. at 645.  Accordingly, we affirm the trial court's grant of the Board's motion to dismiss.  We have reviewed GSTS's remaining arguments and determine that they lack merit and do not warrant further discussion.  <u>See</u> <u>Vogel v. Vogel</u>, 137 N.H. 321, 322 (1993).

<u>Affirmed</u>.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.