NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Merrimack
No. 2018-0537


NEW ENGLAND BACKFLOW, INC. & a.

v.

DANIEL GAGNE & a.

Argued: September 12, 2019
Opinion Issued: November 13, 2019


Orr & Reno, P.A., of Concord (Jeremy D. Eggleton on the brief and orally), for the plaintiffs.


Gordon J. MacDonald, attorney general (Emily C. Goering, assistant attorney general, on the brief and orally), for the defendants.


DONOVAN, J. The plaintiffs, New England Backflow, Inc. (NEB) and Paul Whittemore, appeal an order of the Superior Court (Kissinger, J.) dismissing several of the plaintiffs' claims against the defendants, the New Hampshire Office of the Fire Marshall (OFM) and Jeremy Cyr, in his official capacity as chief inspector of OFM, for failure to state a claim upon which relief may be granted. Specifically, the plaintiffs challenge the trial court's dismissal of their declaratory judgment requests and their claims of unconstitutional taking, malicious prosecution, and abuse of process. They argue that the trial court erred by: (1) concluding that the plaintiffs' declaratory judgment requests were

inconsistent with the applicable statutory language without holding an evidentiary hearing; (2) ruling that the plaintiffs' request for declaratory judgment relating to a cease and desist order issued by OFM was moot; (3) concluding that Whittemore did not have a vested right to perform his professional work necessary to support the plaintiffs' takings claims; and (4) ruling that the plaintiffs failed to state a claim for malicious prosecution and abuse of process.

We affirm the trial court's order because the declarations the plaintiffs seek are inconsistent with the plain and ordinary meaning of the relevant statutory language, their request for the cease and desist declaration is moot, and the plaintiffs' remaining claims fail to state a claim upon which relief may be granted.

## I. Facts

We assume the following facts, as alleged in the plaintiffs' complaint, to be true. Cluff-Landry v. Roman Catholic Bishop of Manchester, 169 N.H. 670, 671 (2017). Whittemore has been a water system operator certified by the New Hampshire Department of Environmental Services (DES) since 1992 (hereinafter, certified operator). See RSA 332-E:3, I (2017) (providing that "[n]o water treatment plant or water distribution system shall be operated" unless it is "supervised by a certified operator"), :6, I (2017) (granting DES the authority to issue certificates to operators); see also RSA 332-E:1, IV (2017) (defining "[o]perator" as "the individual who has full responsibility for the operation of a water treatment plant or water distribution system and any individual who normally has charge of an operating shift, or who performs important operating functions including analytical control"). In 1994, Whittemore started a business, now known as NEB, which installs, repairs, tests, and replaces backflow prevention devices, also known as backflow preventers, for private and public entities.

A backflow preventer is a one-way valve that permits water to flow only in a single direction. Its purpose is to prevent water that has been exposed to potential contaminants from flowing back into the public water system. Backflow preventers are installed to prevent, for example, water in sprinkler, fire suppression, or heating systems from flowing back into the public water system. Backflow preventer installation often requires the installation of additional ancillary equipment, including water meters, meter horns, expansion tanks, and suspension devices.

In May 2013, Daniel Gagne, a licensed plumber, informed OFM, which assists DES in enforcing the state's plumbing licensure requirements, see RSA 153:28, IV (Supp. 2018), that it should investigate NEB for engaging in plumbing without a license. OFM initiated an investigation and dispatched an inspector to speak with Whittemore about NEB's activities. Whittemore

2

produced copies of his DES certification and asserted that he was certified to conduct backflow prevention testing, installation, repair, and replacement pursuant to RSA 485:11 (Supp. 2018) and RSA chapter 332-E (2017), and that he was exempt from statutory plumbing licensure requirements.

In June, NEB installed backflow preventers, water meters, and other equipment for the Town of Pittsburg, which included installation of these devices in private buildings served by the Pittsburg public water supply. During the installation, Whittemore informed the Pittsburg water supply operator of a number of preexisting code violations, which, according to the plaintiffs' complaint, were "beyond the scope of Mr. Whittemore's work or authority to address." The water supply operator told Whittemore that he would address these issues independently.

In September, Cyr and another OFM inspector went to Pittsburg after receiving a new complaint from Gagne regarding NEB's work. There, they identified a number of plumbing code violations in buildings where NEB had performed its work. Following this inspection, Cyr issued a cease and desist order to NEB, demanding that the company cease plumbing without a license.

Upon receipt of the cease and desist order, Whittemore met with Cyr and OFM's supervisor of building safety and construction. Whittemore explained that the alleged code violations in Pittsburg predated his work there and that he had notified the Town's water supply operator of the violations. Nonetheless, Cyr maintained that NEB's work was not exempt from the plumbing licensure requirements. According to OFM's summary of this meeting, however, both parties agreed that "the statute as written is too wide and ambiguous for interpretation without rules written to properly address the intent . . . of the law." The parties also agreed that, while the interpretation of the statute was under review, a licensed plumber would review NEB's work to ensure code compliance.

Thereafter, a master plumber licensed in New Hampshire and approved by OFM reviewed all of the work performed by NEB. The master plumber found that NEB had not committed any code violations during its work in Pittsburg. Nevertheless, OFM continued to investigate NEB's work in Pittsburg until June 2014.

Meanwhile, Gagne continued to complain to OFM about NEB's work. In July 2015, he asserted that he lost potential business with a retail store in Hillsborough to NEB, and that "towns like Peterborough" had told him that NEB handles their repairs. Shortly thereafter, Cyr called NEB and stated that he had received complaints from Hillsborough and Peterborough that NEB was engaging in plumbing without a license.

3

On July 30, 2015, at the Hillsborough retail store, an NEB employee tested and removed a defective backflow preventer that connected the building's water system to an outside landscaping sprinkler. The store declined to replace the backflow preventer. Consequently, the NEB employee capped the open pipe to prevent environmental contaminants from entering into the building's drinking water system due to the absence of the backflow preventer. Once Cyr identified the NEB employee, he informed OFM's chief that he planned to seek a "warrant for plumbing without a license" based upon the employee's work at the store. See RSA 153:37, I (2014). In late August, following another complaint from Gagne, Cyr drafted an affidavit alleging that the employee was plumbing without a license.

In November, in response to a request submitted by Whittemore, OFM informed Whittemore that it would conduct an internal review of Cyr's conduct in connection with his investigation of NEB. Following the initiation of the internal review, Cyr forwarded his affidavit to OFM's prosecutor. In December 2015, the prosecutor executed a warrant affidavit for the arrest of the employee for plumbing without a license when he cut and capped the pipe at the Hillsborough store. OFM subsequently arrested the employee.

In March 2016, the plaintiffs filed a complaint against the defendants, alleging, inter alia: (1) a claim for declaratory judgment, in which the plaintiffs requested that the trial court make several declarations relating to the plaintiffs' rights to perform backflow prevention work without a plumbing license under RSA 485:11 and RSA 153:36 (Supp. 2018) and the legality of the cease and desist order; (2) a claim of unconstitutional taking for depriving the plaintiffs of their right to perform backflow prevention work; and (3) claims of malicious prosecution and abuse of process for investigating NEB and arresting its employee.

The defendants moved to dismiss the plaintiffs' complaint. The trial court granted the defendants' motion as to the claims now before us. The plaintiffs moved for reconsideration, and the trial court denied the motion. This appeal followed.

## II. Standard of Review

When reviewing a trial court's grant of a motion to dismiss, we consider whether the allegations in the plaintiffs' pleadings are reasonably susceptible of a construction that would permit recovery. Clark v. N.H. Dep't of Emp't Sec., 171 N.H. 639, 645 (2019). We assume the plaintiffs' pleadings to be true and construe all reasonable inferences in the light most favorable to them. Id. However, we need not assume the truth of the statements in the plaintiffs' pleadings that are merely conclusions of law. Id. We then engage in a threshold inquiry that tests the facts in the complaint against the applicable

4

law.  Id.  We will uphold the trial court's grant of a motion to dismiss if the facts pleaded do not constitute a basis for legal relief.  Id.

When, as here, the parties' arguments require us to engage in statutory interpretation, our review is de novo.  Id. at 650.  When interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.  Id. at 651.  We interpret legislative intent from the statute as written, and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.  When the language of a statute is plain and unambiguous, we need not look beyond the statute itself for further evidence of legislative intent.  Id.  On the other hand, when the language of a statute is ambiguous, we look to the legislative history to aid our interpretation of the meaning of the statutory language.  Green v. Sch. Admin. Unit #55, 168 N.H. 796, 801 (2016).

### III. Analysis
### A. Declaratory Judgment
### 1. Scope of RSA 485:11 and RSA 153:36, IV

We begin with the dismissal of the plaintiffs' declaratory judgment requests relating to their right to conduct backflow prevention work without a plumbing license under RSA 485:11 and RSA 153:36.  RSA 153:36, IV provides an exception to the plumbing licensure requirement for certified operators "when performing plumbing tasks within their certifications, as defined in RSA 485:11 and RSA 332-E:3."  RSA 153:36, IV, however, expressly limits this exception to "the testing, maintenance, repair or replacement, and installation of the water meter, meter horn, and backflow prevention devices directly adjacent to and required as part of the protection of the drinking water distribution system."

RSA 485:11 provides, in relevant part:

There shall be a backflow prevention device installed at every connection to a public water system if the facility connected may pose a hazard to the quality of water supplied by the public water system as determined by [DES].  Where applicable, the facility receiving water from a public water supply shall be responsible for having such . . . backflow prevention devices inspected and tested by individuals certified by a third party who has been approved by [DES] to conduct backflow device inspection and testing certification.  The facility shall also have backflow devices installed, maintained, repaired, and replaced by individuals qualified by either a plumbers license or by certification by [DES] . . . .

RSA 485:11 also limits qualified individuals to "the inspection and testing, maintenance, repair or replacement, and installation of the water meters,

5

meter horns, backflow preventers, and assembly devices directly adjacent to and required as part of the protection for the drinking water distribution system."

The plaintiffs' complaint sought the following declarations based upon these statutory provisions: (1) RSA 485:11 and RSA 153:36 authorize the plaintiffs to perform "backflow related work" that "necessarily includes ancillary, collateral or coincidental work on pipes necessary to complete the backflow work and restore the system to working order and code compliance," without a plumbing license; (2) backflow preventer work conducted by certified operators falls within the scope of RSA 485:11 "irrespective of the location of the backflow preventer"; and (3) the work performed by NEB's employee at the Hillsborough retail store fell within the scope of RSA 485:11 and was exempt from plumbing licensure requirements under RSA 153:36.

When dismissing these requests, the trial court concluded that: (1) there was no statutory language to support the "broad, and potentially limitless," unlicensed plumbing work set forth in the plaintiffs' first requested declaration; (2) the legislature intended to limit the backflow prevention work performed by certified operators to backflow preventers that are "'directly adjacent" to the public water system; and (3) the employee's work did not fall within the scope of the statutes because the complaint contains no allegation that the backflow preventer removed by the employee was directly adjacent to the public water system, and RSA 485:11 allows certified operators to repair and replace, but not to solely remove, backflow preventers.

The plaintiffs now contend that the trial court erred in interpreting the statutes using the ordinary definitions of the statutes' terms. They assert that the "statutory framework that governs the protection of public drinking water contains numerous contradictions and ambiguities," and therefore requires evidence about backflow prevention to clarify the meaning of the statutes' terms. We disagree.

The exception to plumbing licensure requirements set forth in RSA 153:36, IV applies only when a certified operator performs "plumbing tasks . . . as defined in RSA 485:11 and RSA 332-E:3." Of these two statutes, only RSA 485:11 discusses tasks relating to backflow preventers. Therefore, we turn our attention there. In doing so, we find no ambiguity that would require us to look beyond the plain and ordinary meaning of the statute's terms to resolve the issue before us.

The first sentence of RSA 485:11 states: "There shall be a backflow prevention device installed at every connection to a public water system if the facility connected may pose a hazard to the quality of water supplied by the public water system as determined by [DES]." Thus, the scope of the statute is limited to backflow preventers required by the statute to be installed at the

6

connection to the public water system.  RSA 485:11 also requires the facility to have these backflow preventers inspected and tested "by a third party who has been approved by [DES]," and installed, maintained, repaired, and replaced by qualified individuals — a licensed plumber or a certified operator.  Therefore, at most, RSA 485:11 authorizes certified operators to inspect, test, install, maintain, repair, and replace backflow preventers required by the statute to be installed at a facility's connection to a public water system.

Nothing in the statute expressly or implicitly authorizes certified operators to work on backflow preventers that do not fall within this category or to engage in tasks that fall outside of the scope of those listed in the statute.  In fact, like RSA 153:36, IV, RSA 485:11 expressly limits the activities of certified operators to the "inspection and testing, maintenance, repair or replacement, and installation of the water meters, meter horns, backflow preventers, and assembly devices directly adjacent to and required as part of the protection for the drinking water distribution system."  Thus, the statute plainly limits the type of tasks certified operators may perform and the devices upon which they may perform those tasks.

The plaintiffs, however, maintain that this interpretation is contrary to the purpose of RSA chapter 485 (2013 & Supp. 2018) to protect the public water system from contaminants.  See RSA 485:1, I (Supp. 2018) ("The purpose of this chapter is to provide a comprehensive drinking water protection program for the citizens of New Hampshire.").  They argue that, because of the "cross connection" within a facility's water system, the public water system could be at risk of contamination if certified operators are not permitted to work on all backflow preventers within facilities, even those that are not located at the connection to the public water system.  The plaintiffs therefore assert that we must construe the statute as permitting the plaintiffs to work on all backflow preventers to effectuate the statute's purpose.  Again, we disagree.

Not only would the plaintiffs' interpretation require us to ignore the express language of the statutes, but it would also mandate that we substitute our judgment for that of the legislature.  See Smith Insurance, Inc. v. Grievance Committee, 120 N.H. 856, 863 (1980) (explaining that we may not "substitute our judgment for that of the legislature").  RSA 485:11 seeks to protect the public water system by requiring that potentially hazardous facilities have backflow preventers installed, inspected, tested, maintained, repaired, and replaced at each connection to the public water system.  If the legislature believed that this requirement was insufficient to protect the public water system from contaminants within hazardous facilities, the legislature could have set forth additional requirements — such as requiring the installation and maintenance of backflow preventers at other locations within a facility.  The legislature did not do so, and we will not read requirements into the statute that the legislature did not see fit to include.

Nevertheless, the plaintiffs argue that our interpretation of RSA 485:11 creates an absurd result, based upon the language in RSA 485:11 that limits the activities of "qualified individuals" — licensed plumbers and certified operators — to "the inspection and testing, maintenance, repair or replacement, and installation of . . . backflow preventers . . . directly adjacent to . . . the drinking water distribution system." Because this limitation applies to both licensed plumbers and certified operators, the plaintiffs contend that our interpretation of the statute allows "no person to perform work on backflow preventers inside [of a] building." We disagree.

As an initial matter, we reach no conclusion as to whether RSA 485:11 prohibits qualified individuals from performing work on backflow preventers inside of a facility. The statute is silent as to the physical location — whether inside or outside of a facility — of the connections to the public water system that may require a backflow preventer. We merely conclude that RSA 485:11 limits the work of qualified individuals to, at most, the installation, inspection, testing, maintenance, repair, and replacement of backflow preventers required to be installed at the connection to the public water system.

To the extent that the plaintiffs argue that our interpretation prevents any individual, whether a licensed plumber or a certified operator, from performing work on all other backflow preventers that may exist within a facility, this argument ignores the statutory authority of licensed plumbers to conduct a broad range of tasks on public and private water systems. See RSA 153:27, XIV (2014) (defining "plumbing" as "the practice . . . used in the installing, maintenance, extension, and alteration of all piping, fixtures, plumbing appliances, and plumbing appurtenances within or adjacent to any structure, in connection with . . . public or private water systems" (emphasis added)). Therefore, the plain language of the statute does not prohibit licensed plumbers from working on backflow preventers that fall outside of the scope of RSA 485:11.

In light of this determination, we conclude that the plaintiffs' requested declarations relating to the scope of RSA 485:11 and RSA 153:36 are inconsistent with the statutes. As to the plaintiffs' first request — seeking a declaration that RSA 485:11 and RSA 153:36 authorize the plaintiffs to conduct "ancillary, collateral or coincidental work on pipes necessary to complete the backflow prevention work and restore the system to working order and code compliance" — RSA 485:11 and RSA 153:36, IV expressly limit the work certified operators are authorized to perform without a plumbing license to the activities specifically enumerated in the statutes. The statutes do not confer the authority upon certified operators to work on pipes generally, nor does it confer the broad, and vague, authority upon certified operators to "restore the system to working order and code compliance." The plaintiffs' requested declaration would provide potentially limitless authority to engage in

8

plumbing activities without the requisite license, which conflicts with the language of the statutes.

As to the next requested declaration — that "backflow preventer work falls within the scope of RSA 485:11 irrespective" of the device's location — the language of RSA 485:11 and RSA 153:36, IV provides that certified operators may <u>not</u> work on backflow preventers irrespective of their location. Finally, the plaintiffs' requested declaration relating to the scope of the employee's work fails for the same reason. The plaintiffs' complaint alleges only that the backflow preventer removed by their employee from the retail store was in a location "leading from the <u>building's</u> water system outside to a landscaping sprinkler." (Emphasis added.) Thus, the complaint fails to allege that the backflow preventer was located at a connection to the public water system. <u>See</u> RSA 485:11; RSA 153:36, IV. Accordingly, we conclude that the trial court did not err in dismissing these requested declarations.

<u>2. Cease and Desist Order</u>

We next address the trial court's dismissal of the plaintiffs' requested declaration pertaining to the validity of the cease and desist order. The trial court concluded that this request was moot because the cease and desist order pertained only to NEB's work in Pittsburg, which was completed. On appeal, the plaintiffs do not dispute that their Pittsburg work was the subject of the cease and desist order, nor do they dispute that the work has been completed. Instead, they argue that, if OFM did not have authority to issue the order, the plaintiffs' "claims for damages . . . remain ripe" because they incurred damages as a result of the cease and desist order and are entitled to enhanced compensatory damages and attorney's fees and costs based upon OFM's "oppressive conduct."

To bring a declaratory judgment claim under RSA 491:22 (Supp. 2018), a party must show that some right of the party has been impaired or prejudiced by the application of a rule or statute. <u>Duncan v. State</u>, 166 N.H. 630, 645 (2014). To meet this requirement, the claims raised must be definite and concrete and touch the legal relations of parties having adverse interests. <u>Id</u>. A petition for declaratory judgment becomes moot when any event occurs after the petition is filed which terminates the adverse claim. <u>Real Estate Planners v. Town of Newmarket</u>, 134 N.H. 696, 701 (1991).

Because the plaintiffs' Pittsburg work was the subject of the cease and desist order, their completion of that work terminated any adverse claim they may have had against the defendants regarding the validity of the order at the time it was issued. Although the plaintiffs claim that they suffered damages as a result of the defendants' conduct, RSA 491:22 provides limited authority to the superior court when evaluating a declaratory judgment claim: it authorizes the superior court only to "determine the question as between the parties . . . ."

9

It does not authorize the trial court to award damages, and it expressly prohibits an award of attorney's fees and costs in declaratory judgment actions "that are not for the purpose of determining insurance coverage." RSA 491:22, I. Therefore, the plaintiffs' requests for damages and attorney's fees fail to provide a basis that would permit the adjudication of their declaratory request. Accordingly, the trial court did not err in dismissing this request.

## B. Unconstitutional Taking

We now address the plaintiffs' unconstitutional taking claim. The plaintiffs' complaint asserts that they have a vested property right in the backflow prevention work they have been performing since Whittemore obtained his operator certification, and that the efforts of the defendants to prohibit the plaintiffs from performing these "traditional business activities" amounts to an "unconstitutional taking of property, subject to damages . . . ." In their objection to the defendants' motion to dismiss, the plaintiffs clarified this claim, contending that the restrictions imposed by statutory amendments to RSA 485:11 and RSA 153:36, IV, passed by the legislature in 2014, constitute an "erosion" of their right to conduct backflow prevention work without limitation under RSA chapter 332-E.

The trial court rejected this argument, concluding that the previous versions of the statutes have always limited certified operators' work to public water systems. The trial court further concluded that recent amendments to the statutes expanded — rather than eroded — the activities authorized by the statutes. The plaintiffs now challenge these conclusions. We construe the plaintiffs' argument on appeal as follows: that the defendants' actions under recent statutory amendments deprived the plaintiffs of a vested property right to conduct the unlimited backflow prevention work previously permitted under prior versions of the statutes, thereby entitling the plaintiffs to compensation.[1]

Part I, Article 12 of our constitution provides that "no part of a man's property shall be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people." We have previously

---

[1] The defendants first argue that the plaintiffs failed to preserve their unconstitutional taking argument because they rely, in part, upon a prior version of RSA 153:36, IV, set forth in a now-repealed statute, see RSA 329-A:13 (2004) (repealed 2013), which the plaintiffs did not expressly cite in their arguments to the trial court. However, the plaintiffs argued to the trial court that, prior to the 2014 statutory amendments, the statutes "placed no limitation on which backflow preventers [Whittemore] and his firm could work on," and quoted a prior version of RSA 153:36, IV that is almost identical to the language in the repealed RSA 329-A:13. Because we conduct statutory interpretation de novo, see Clark, 171 N.H. at 650, and because the plaintiffs' argument to the trial court provided it with the opportunity to draw conclusions about the plaintiffs' rights under prior versions of the statutes, we conclude that the plaintiffs' argument is sufficiently preserved for our review. See SNCR Corp. v. Greene, 152 N.H. 223, 224 (2005) (explaining that the trial court should have "a full opportunity to come to sound conclusions and to correct claimed errors in the first instance" (quotation omitted)).

10

applied this provision to the regulation of land, holding that a regulation "effects an unconstitutional taking" where "its application to a particular parcel denies the owner an economically viable use of his or her land." Quirk v. Town of New Boston, 140 N.H. 124, 130 (1995) (quotation omitted). A plurality of the United States Supreme Court has also recognized that "economic regulation . . . may nonetheless effect a taking" under the Fifth Amendment to the United States Constitution, even though "takings problems are more commonly presented when the interference with property can be characterized as a physical invasion by government." Eastern Enterprises v. Apfel, 524 U.S. 498, 522-23 (1998) (plurality opinion) (quotation omitted). But see id. at 541-42 (Kennedy, J., concurring in the judgment and dissenting in part) (identifying prior cases in which the Takings Clause was applied only to "specific and identified properties or property rights").

The plaintiffs fail to cite any authority that would support an unconstitutional taking claim based upon the State's enforcement of a law restricting activities previously authorized by a professional certification. Nonetheless, assuming without deciding that such a claim is viable, we agree with the trial court that the plaintiffs have failed to state an unconstitutional taking claim because they cannot demonstrate that the prior versions of the statutes authorized certified operators to engage in unlimited backflow prevention work.

When Whittemore obtained his certification from DES in 1992, RSA chapter 332-E defined "[o]perator" as "the individual who has full responsibility for the operation of a water treatment plant or water distribution system and any individual who normally has charge of an operating shift, or who performs important operating functions including analytical control." RSA 332-E:1, IV (1984). The statute further defined "[w]ater distribution system" as the "portion of the public water system which includes sources, pipes, storage facilities, pressure booster facilities, and all measuring and control devices used to convey potable water to the system users." RSA 332-E:1, V (1984) (emphasis added). The statute defined "[w]ater treatment plant" as "the portion of the public water supply system which in some way alters the physical, chemical, or bacteriological quality of the water being treated." RSA 332-E:1, VI (1984) (emphasis added). Finally, the statute defined "[c]ertificate" as "a certificate of competency issued by the division of water supply and pollution control stating that the operator has met particular requirements set by the division of water supply and pollution control for certification at [the operator's] level of operation." RSA 332-E:1, II (Supp. 1992) (amended 1996).

These definitions demonstrate that a DES certification was intended to authorize an operator to operate a water treatment plant or distribution system of a public water system. Nothing in this prior version of RSA chapter 332-E (1984 & Supp. 1992) authorized a certified operator to work on private water systems. Given that the statutory authority of certified operators has not

changed in substance since Whittemore received his certification, compare RSA ch. 332-E (1984 & Supp. 1992) with RSA ch. 332-E (2017), we conclude the plaintiffs' DES certification alone did not provide the plaintiffs with a right to conduct unlimited backflow prevention work without a plumbing license, as they contend.

Nevertheless, the plaintiffs argue that the prior versions of RSA 485:11 provided such a right. We disagree. In 1992, RSA 485:11 read as follows:

Every valve, gate or other device for controlling or preventing the inflow of water of such unapproved character to the public supply pipe system must be constructed to permit efficient inspection and testing, and an actual test of such device shall be made not less than twice annually by the individual, corporation or association furnishing water to the public. If the water supply management shall find that a gate or valve is not working properly, and cannot be readily adjusted, it shall at once notify the division, and, under the advice and direction of said division, shall repair or correct the faulty condition.

RSA 485:11 (1992) (amended 1996, 2013, 2014, 2015). Other than a one-word amendment in 1996, see Laws 1996, 228:106, this version of the statute remained in effect until 2013. See RSA 485:11 (2013) (amended 2013, 2014, 2015).

Similar to RSA chapter 332-E, nothing in this version of the statute authorized the plaintiffs, as certified operators, to conduct unlimited backflow prevention work without a plumbing license. To the contrary, like the current version of RSA 485:11, this prior version concerns the public water system by referencing devices "for controlling or preventing the inflow of water . . . to the public supply pipe system." RSA 485:11 (1992). Furthermore, by requiring that the "water supply management" notify DES, which had authority over the public water supply, the statute demonstrates that RSA 485:11 applied only to backflow into the public water system, not to backflow occurring within a certain facility's private water system. Id.

In 2013, the legislature repealed and reenacted RSA 485:11, see Laws 2013, 50:1, replacing it with the operative language that, in large part, appears in the current statute:

There shall be a backflow prevention device installed at every connection to a public water system if the facility connected may pose a hazard to the quality of water supplied by the public water system as determined by the [DES]. The facility receiving water from a public water supply shall be responsible for having such

12

backflow prevention devices installed, serviced, and tested by individuals qualified by license or certification to perform these activities. Testing of backflow devices shall occur twice annually unless the public water supplier determines the facility poses a low hazard, in which case testing shall be performed on an annual basis. The facility receiving water from a public water supplier is responsible for ensuring that the backflow prevention device is working properly to prevent backflow into the public water system.

RSA 485:11 (Supp. 2013); see RSA 485:11 (Supp. 2018). As discussed above, this language limits the scope of the statute to backflow preventers installed at a facility's connection to the public water system, again demonstrating the statute's concern for backflow entering the public water system. Similar to its current version, the 2013 version provides no express or implied authority to certified operators to engage in backflow prevention work on other backflow preventers. Accordingly, we conclude that the plaintiffs' DES certification did not give them a vested property right under the prior versions of RSA 485:11 to perform backflow prevention work beyond a facility's connection to the public water system.

Finally, the plaintiffs argue that the prior version of RSA 153:36, IV created this vested property right. In 2003, the legislature enacted RSA 329-A:13, VII (2004) (repealed 2013), which excepted from plumbing licensure requirements "employees of public drinking water systems and public water system operators certified by [DES] for drinking water treatment." Laws 2003, 272:11. In 2013, this statute was repealed and reenacted as RSA 153:36, IV (2013) (amended 2014), providing an identical exception to that in RSA 329-A:13, VII. See Laws 2013, 275:8. RSA 153:36, IV was not amended to its current version, with language expressly limiting the scope of the exception, until 2014. See Laws 2014, 106:1. While the language in these prior versions of RSA 153:36, IV provides no express limitation to the plumbing licensure exception for certified operators, it applied only to employees of public drinking water systems and public water system operators certified by DES for drinking water treatment. Thus, these versions of the statute could have only applied to certified operators when working within the scope of their certification.

Given that the plaintiffs, by virtue of their operator certification, were responsible for working on public water systems at the time that RSA 329-A:13, VII was enacted, and that RSA 329-A:13, VII expressly limited the plumbing licensure exception to certified water system operators for drinking water treatment, we conclude that this exception did not give the plaintiffs the right to perform unlimited backflow prevention work on backflow preventers that were not part of the public water system. Accordingly, the plaintiffs' complaint fails to state a claim for an unconstitutional taking.

13

### C. Malicious Prosecution and Abuse of Process

We now address the plaintiffs' final challenge to the trial court's dismissal of their malicious prosecution and abuse of process claims for failure to state a claim upon which relief may be granted. The trial court dismissed both claims because the subject of the prosecution and its process was the plaintiffs' employee, rather than the plaintiffs. As to the abuse of process claim, the trial court also concluded, in relevant part, that the plaintiffs failed to allege facts demonstrating that the defendants abused process after it was issued. See Business Publications v. Stephen, 140 N.H. 145, 148 (1995).

The plaintiffs argue that they have a right to bring these claims because they were the intended target of the malicious prosecution and abuse of process and have suffered a concrete injury as a result. To the extent that we conclude that they do not fall within the class of plaintiffs entitled to bring either claim, they urge us to expand these common law causes of action based upon the facts of this case and public policy considerations.

We need not reach these arguments, however, because we conclude that their claims fail on other grounds. See Douglas v. Douglas, 143 N.H. 419, 427 (1999). To prove a claim for malicious prosecution, the plaintiffs must demonstrate that: (1) the plaintiffs were subjected to a criminal prosecution or civil proceeding instituted by the defendant, (2) without probable cause, (3) with malice, and (4) the prior action terminated in the plaintiffs' favor. Farrelly v. City of Concord, 168 N.H. 430, 445 (2015). In the context of a malicious prosecution claim, probable cause is defined as "such a state of facts in the mind of the prosecutor as would lead a person of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty." Paul v. Sherburne, 153 N.H. 747, 749 (2006) (quotation and brackets omitted). The existence of probable cause is a question for the trier of fact to the extent that it depends on the credibility of conflicting evidence proffered on that issue. Id. at 750. Whether there was probable cause is ultimately, however, a question of law to be determined by the court. Id. Assuming the factual allegations in the plaintiffs' complaint to be true, see Cluff-Landry, 169 N.H. at 671, we conclude that the complaint fails to allege that the arrest of the employee lacked probable cause.

RSA 153:37, I, provides, "Any person or business entity who performs . . . plumbing without first having obtained a license, shall be guilty of a misdemeanor." According to the plaintiffs' complaint, the OFM prosecutor "executed an affidavit in support of a warrant to arrest [the employee] for plumbing without a license" for the act of cutting and capping the pipe at the Hillsborough store. The plaintiffs' complaint alleges that the employee did just that — he removed a defective backflow preventer leading from the store's water system to a landscaping sprinkler and capped the open pipe. Given that the statutes limit certified operators, who are not licensed plumbers, to

14

performing specific work on backflow preventers required by statute to be installed at the connection to the public water system, we conclude that the plaintiffs' complaint fails to allege that the employee engaged in activity permitted by RSA 485:11 or RSA 153:36, IV. Therefore, we must also conclude that the plaintiffs' complaint fails to allege facts demonstrating that the defendants lacked probable cause to arrest the employee for plumbing without a license. See RSA 153:37, I.

We also conclude that the plaintiffs' abuse of process claim fails. To prove a claim of abuse of process, the plaintiffs must prove that: (1) a person used (2) legal process, whether criminal or civil, (3) against the party, (4) primarily to accomplish a purpose for which it is not designed, and (5) caused harm to the party (6) by the abuse of process. Tessier v. Rockefeller, 162 N.H. 324, 335 (2011). Moreover, an action for abuse of process is concerned with the improper use of process after it has been issued. Id. Thus, liability is not imposed for the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings. Id. Rather, liability is imposed for the subsequent misuse of process after it has been properly obtained. Id.

The trial court concluded that the abuse of process alleged in the complaint concerned the initiation of criminal proceedings against the employee through the procurement and execution of the arrest warrant, and, therefore, that the complaint failed to allege abuse of process after it had been issued. Even if we construe the plaintiffs' complaint as alleging that the abuse of process was the defendants' use of the arrest warrant after it was issued by a court, the complaint still fails to plead facts necessary to state an abuse of process claim.

We have held that abuse of process comprises two essential elements: an ulterior purpose and a willful act in the use of the process not proper in the regular conduct of the proceeding. Clipper Affiliates v. Checovich, 138 N.H. 271, 276 (1994). "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." Id. at 276-77 (quoting W. P. Keeton, Prosser and Keeton on the Law of Torts 898 (5th ed. 1984)). Thus, "[t]here is no liability where a party has done nothing more than carry out the process to its authorized conclusion, even though with ulterior intentions." Id. at 277.

Here, the plaintiffs' complaint fails to set forth any allegations that the defendants, after procuring the arrest warrant, used it for something other than its authorized purpose — to arrest the employee. Thus, even though the plaintiffs' complaint, viewed in the light most favorable to them, may adequately allege that the defendants had ulterior intentions in procuring and executing the warrant, the complaint fails to allege that the defendants used the warrant for an improper purpose to gain "'a collateral advantage, not

properly involved in the proceeding itself . . . .'" <u>Id</u>. at 276 (quoting Keeton, <u>supra</u>). Accordingly, we affirm the trial court's decision to dismiss the plaintiffs' abuse of process claim.

<u>Affirmed</u>.

HICKS, J., concurred; HANTZ MARCONI, J., concurred specially.

HANTZ MARCONI, J., concurring specially. I join the opinion of the court in all respects. I write separately to note that, while I agree that RSA 485:11 can be interpreted no other way than as explained here, I question the utility of preventing certified operators of water distribution systems — persons having full responsibility for the safe operation of water treatment plants and water distribution systems, <u>see</u> RSA 332-E:1, II, IV — from working on backflow prevention devices subsidiary to the primary device installed at the point of connection to the public water supply. Because the purpose and technology for those devices are identical, it seems odd to allow certified operators to perform work on the main backflow preventer but reserve to licensed plumbers the ability to work on all other backflow preventers. Furthermore, while I agree that regulated professions should not exceed the authorizations conferred by license, it strikes me as extreme that a certified operator would be arrested for removing, but not replacing, a backflow preventer. The legislature may want to take another look at this regulatory area.